**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER EASTON, on behalf of herself and all others similarly situated, | Civil Action No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| 1STOPBEDROOMS, INC.; PAYLESS FURNITURE, INC.; and DOES 1 THROUGH 10, INCLUSIVE, | |
| Defendants. | |

## INTRODUCTION

1.      This is a class action, brought under New York law, on behalf of a class of consumers who purchased furniture or other merchandise from Defendants and were victims of Defendants' unlawful uniform policies alleged herein.

2.      Specifically, this lawsuit challenges various material misrepresentations, false advertisements, and deceptive acts and practices that Defendants make as a matter of course in Defendants' sale of furniture from their headquarters in New York.

3.      First, Defendants have a uniform policy of selling furniture with the explicit promise that a customer may cancel any time before shipment and receive a full refund, but then refusing to provide the promised refund when a customer cancels in a timely manner.

4.      Second, Defendants have a uniform policy of deliberately delaying the communication of a customer's cancellation request to the furniture manufacturer until after the furniture has shipped, so that Defendants can refuse to allow the customer to return the furniture, or at minimum charge the customer a 15% "restocking fee" plus exorbitant "return shipping" costs.

5.      Third, if customers complain to the Better Business Bureau or some other consumer protection agency about Defendants' deceptive and misleading conduct, Defendants have a uniform policy of promising them a full refund so long as they withdraw their consumer complaint.  Once the customer has withdrawn his or her complaint, however, Defendants again refuse to provide the promised refund.

6.      These uniform policies employed by Defendants, which are described more fully herein, violate New York General Business Law §§ 349 and 350, as well as New York common law.

7.      This action seeks redress for Plaintiff and the proposed class in the form of compensatory and statutory damages, punitive damages, and injunctive relief, which would include, *inter alia*, an order directing Defendants to cease the challenged practices and initiate a program to provide refunds and/or restitution to Plaintiff and the class.

## JURISDICTION AND VENUE

8.      **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332.  There is minimal diversity between Plaintiff and the class and Defendants, and the total amount in controversy exceeds the sum of $5,000,000.00.

9.      **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because, *inter alia*: (1) Defendants are headquartered in New York and in this District; (2) Defendants are authorized to do business and regularly conduct business in New York, including in this District; (3) the claims alleged herein arose in New York, and specifically in this District, in that Defendants' unlawful policies were created and implemented in New York, Defendants' misrepresentations and deceptive conduct were performed in New York, and Plaintiff and class members purchased merchandise from Defendants in New York, were charged by Defendants in

2

New York, and their requests for cancellation and refunds were rejected by Defendants in New York; and/or (4) Defendants have committed tortious acts within New York and this District (as alleged, without limitation, throughout this Complaint).

10.     **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are New York citizens headquartered in Brooklyn, Kings County, New York, and Plaintiff and class members purchased merchandise from Defendants' headquarters in Brooklyn, Kings County, New York.

11.     **Applicable Law**. New York law applies to the claims of Plaintiff and the class because, *inter alia*:  (1) Plaintiff and the class members purchased merchandise from Defendants in New York; (2) they were charged for said merchandise by Defendants in New York; (3) their requests for cancellation and refunds were rejected by Defendants in New York; and (4) Defendants' false promises, false and misleading conduct, and unlawful policies complained of herein arose from and were made at Defendants' headquarters in New York.  Thus, a substantial part of each complained-of transaction occurred in New York state.  *See*, *e.g.*, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013).

## THE PARTIES

12.     Plaintiff Jennifer Easton is a resident of Prosper, Texas.  Like all class members, Plaintiff purchased furniture from Defendants in New York and was a victim of Defendants' uniform policies and acts complained of herein; namely, she was promised a full refund upon the timely cancellation of her order, but Defendants deliberately delayed conveying her cancellation request and ultimately refused to provide the promised refund.  Additionally, Plaintiff was promised a full refund if she withdrew her online complaint, but Defendants also refused to provide that promised refund.

13.     Defendant 1StopBedrooms, Inc. is a New York corporation with its principal place of business located at 1716 Coney Island Ave., Brooklyn, New York 11230-5801.

14.     Defendant Payless Furniture, Inc. is a New York corporation with its principal place of business located at 1716 Coney Island Ave., Brooklyn, New York 11230-5801.

15.     Defendants Does 1 through 10 are business entities of unknown form which engaged in or assisted with the unlawful conduct pled herein or which instructed, approved, consented, or participated in the unlawful conduct pled herein. Plaintiff is presently ignorant of the names of these Doe Defendants.  Plaintiff will amend this Complaint to allege the true names and capacities of these defendants when they have been determined.

16.     It is specifically alleged that all Defendants collectively do business as "1StopBedrooms" and are responsible for creating and implementing the unlawful policies and actions complained of herein.  Because each of the Defendants held itself out to Plaintiff and the class as "1StopBedrooms," Plaintiff refers to all Defendants collectively as "Defendants."

**THE UNIFORM POLICIES GIVING RISE TO THE CLASS CLAIMS**

17.     This case challenges certain uniform, unlawful class-wide policies of Defendants, directed at consumers who purchase furniture from Defendants' website www.1StopBedrooms.com either online or over the telephone.

18.     The claims in this action do not involve any individualized interactions between Defendants and Plaintiff or any other class member.

19.     Rather, all claims in this matter arise from the same class-wide policies of Defendants as described herein.

20.     Defendants are in the business of selling furniture and other household products to consumers in New York and throughout the United States from Defendants' headquarters in Brooklyn, Kings County, New York, via their website www.1StopBedrooms.com.

21.     Defendants do not maintain a physical retail store or furniture warehouse.  Rather, Defendants' website advertises furniture from other suppliers and manufacturers.  When customers see an item or "set" of furniture on Defendants' website that they wish to purchase, Defendants will take the furniture order from the customer either online or via telephone and will then order the furniture from the furniture's supplier or manufacturer.  The furniture then ships directly to the customer from the actual supplier or manufacturer.

22.     Although Defendants accept orders both online and via telephone, Defendants strongly suggest that customers order by telephone, ostensibly so that they can receive faster service.  In reality, however, Defendants encourage their customers to order by telephone so that Defendants' sales representatives can "up-sell" additional items and services and push customers to make purchase decisions with various misrepresentations as described herein.  Indeed, when a customer makes an online order, Defendants' sales representatives will often "follow up" with the customer by telephone in an attempt to up-sell additional items or services.

23.     Defendants are able to make a lawful profit by selling furniture and other merchandise and services at prices that are higher than the combined total of Defendants' wholesale purchase price and the costs of shipping the furniture to their customers.

24.     Defendants also make additional, unlawful profit from implementing the misleading and deceptive uniform policies, acts, and practices described herein.

25.     Defendants' deceptive scheme is as follows.

26.     When a customer calls to place an order, Defendants have a uniform policy of having their sales representatives promise customers that they can cancel their order any time before shipment and receive a full refund.  This helps convince hesitant customers to proceed with their order, and also causes customers to be more willing to purchase additional items and services, with the assurance that their purchase is "risk free" so long as they cancel in a timely manner.

27.     Unbeknownst to Defendants' customers, however, Defendants do not let anyone cancel in a timely manner.  Rather, Defendants use multiple tactics to prevent a customer from canceling their orders, so that Defendants do not have to refund any money collected from customers.

28.     First, within 24 hours of a customer's placing an order, Defendants charge the customers' credit card or bank account, so that Defendants are in possession of the customers' money.  This is the case even if the furniture ordered is on back-order or is not due to ship for several weeks.

29.     Second, if customers attempt to cancel an order, regardless of whether the cancellation is timely or not, Defendants summarily inform them that they cannot cancel without paying a "cancellation fee."  This so-called "cancellation fee" is not disclosed by Defendants' sales representatives at the time of the customers' order, was never agreed to by any customer, and is not a part of the contracts between Defendants and their customers.  Indeed, the term "cancellation fee" cannot be found anywhere on Defendants' website.  Plaintiff specifically alleges that the so-called "cancellation fee" is a bogus fee that is made up by Defendants solely to discourage their customers from cancelling an order.

30.     Third, if a customer pushes back about the bogus cancellation fee, Defendants will reluctantly agree to "initiate" the cancellation process and contact the manufacturer or supplier of the furniture to halt the shipment.  However, Defendants have a uniform policy of deliberately delaying the communication of a customer's cancellation request to the manufacturer or supplier until after the furniture has shipped.  Then, Defendants will inform the customer that they were "unable" to cancel their order because it had already shipped.

31.     Defendants do this so that they have an excuse not to pay a full refund to the customer, as promised when the customer placed the order.  Instead, Defendants refuse to pay any refund at all, or at most point customers to their "30 Day Return Policy," which provides that customers may return furniture to Defendants within 30 days of "receiv[ing]" their order if they are dissatisfied with their purchase.  This "Return Policy," however, permits Defendants to charge customers a 15% "restocking fee" plus "return shipping" costs of $1.75 per pound on all returned items.  Thus, a customer who ordered, for example, a $4,000 bedroom set weighing 800 pounds would only receive a refund of $2,000 under Defendants' return policy – with a 15% "restocking fee" of $600 and "return shipping" costs of $1,400 going to Defendants – as opposed to the promised full refund of $4,000.

32.     Thus, contrary to their explicit promise and agreement, Defendants refuse to provide a full refund to customers even when the customers cancel their orders in a timely manner, for Defendants' own profit.

33.     Further, if Defendants' customers complain about Defendants' deceptive and misleading actions by writing a negative review on Defendants' website, Defendants simply refuse to post the negative review.

34.     If customers complain to a third-party website, however, such as the Better Business Bureau or some other consumer protection agency over which Defendants have no control, then Defendants have a uniform policy of promising said customers a full refund so long as they withdraw their complaint or mark it as resolved.  Defendants have used this tactic to raise their Better Business Bureau rating from an "F" in April 2022 to a "C-" in June 2022.

35.     Once the customer has withdrawn his or her complaint in reliance on Defendants' promise to provide a refund, however, Defendants renege on their promise and once again refuse to provide the promised refund.

36.     Through these deceptive, misleading, and unlawful polices and practices, Defendants avoid paying explicitly promised refunds to its customers, thereby increasing Defendants' own profit and that of its shareholders.

37.     What happened to Plaintiff illustrates Defendants' uniform policies complained of herein, and the unconscionable nature of those policies.

38.     On or about Sunday, August 29, 2021, Plaintiff Jennifer Easton placed an order for a six-piece bedroom set of furniture from Defendants.

39.      Plaintiff placed the order via telephone with Defendants' sales representative "Mike."  During the call, Plaintiff was assured that the furniture she had selected was "in stock" and would be delivered to her home within 4-6 weeks.  Plaintiff was also assured that she could cancel her order at any time before it shipped, and she would receive a full refund from Defendants.  Based on these representations, Plaintiff agreed to purchase the furniture from Defendants at a sale price of $3,978.11.

40.     Defendants' promise to give Plaintiff a full refund upon Plaintiff's timely cancellation of her order was material to Plaintiff.  Had Plaintiff known that Defendants would

not give her a full refund, Plaintiff would have neither purchased the furniture from Defendants nor paid any money to Defendants.

41.     The same day, Plaintiff received an email from Defendants confirming her order. The email confirmation provided no material information in addition or contrary to what was told to Plaintiff by Defendants' sales representative Mike.

42.     On the following day, Monday, August 30, 2021, Defendants charged the total sale price of $3,978.11 to Plaintiff's MasterCard.

43.     On or about Friday, September 17, 2021, Plaintiff cancelled her order with Defendants.  On that date, Plaintiff's order had not yet shipped from the manufacturer; thus, according to Defendants' representations and their express agreement with Plaintiff, Plaintiff was entitled to a full refund of the $3,978.11 she had paid to Defendants.

44.     On Monday, September 20, 2021, Defendants' service representative "Jane S" confirmed via email that Defendants had received Plaintiff's cancellation.  She stated, however, that "having to cancel the order now will be subject to the cancelation fees."  See Attachment A, 09/20/21 Email from Jane S (1Stopbedrooms.com) to Plaintiff.

45.     No "cancellation fee" was ever disclosed to Plaintiff, either at the time of her purchase or thereafter.  Further, no "cancellation fee" was ever agreed to by Plaintiff, nor was it part of the contract between Plaintiff and Defendants.  Rather, Defendants' claim that Plaintiff's cancellation would "be subject to the cancelation fees" was simply a made up, bogus, and false statement by Defendants to discourage Plaintiff from cancelling her order.

46.     On Tuesday, September 21, 2021, Plaintiff replied to Defendants:

I would like to proceed with cancelling the order, but I do not approve the cancellation fee.  At the time that I ordered the Bedroom Set on 8/29, Mike informed me that I would be able to cancel anytime before the bedroom set was shipped from the warehouse and would be able to receive a FULL refund.  At the

9

time of my cancellation request, the items had not shipped.  Thank you for processing the refund of the full amount.

See Attachment A, 09/21/21 Email from Plaintiff to Jane S (1Stopbedrooms).

47.     On Thursday, September 23, 2021, Defendants' service representative Jane S responded:  "Hi Jennifer, The cancelation request has been submitted to the manufacturer.  Once confirmed, the refund will be issued to your initial payment source.  The process will take a few business days."  See Attachment B, 09/23/21 Email from Jane S (1Stopbedrooms.com) to Plaintiff.

48.     Defendants' representation that "[t]he cancelation request has been submitted to the manufacturer" was another false statement.  As of September 23, 2021, Defendants had not submitted Plaintiff's cancellation to the manufacture as claimed.  Rather, Defendants deliberately delayed communicating Plaintiff's cancellation to the manufacturer so that Plaintiff's order would ship and Defendants could avoid giving Plaintiff a full refund.

49.     As of September 23, 2021, Plaintiff's order still had not shipped from the manufacturer; thus, according to Defendants' express representation, which was a material term of Defendants' agreement with Plaintiff, Plaintiff was still entitled to a full refund of the $3,978.11 she had paid to Defendants.

50.     On Monday, October 4, 2021 – 17 days after Plaintiff initiated her cancellation, and 11 days (or 6 business days) after Defendants confirmed that they had "submitted" Plaintiff's cancellation to the manufacturer – Plaintiff received an email notice from Defendants stating that the manufacturer "informed us that they were unable to cancel your order because this order has already shipped out."  See Attachment C, 10/04/21 Email from Defendants to Plaintiff.  The email instructed Plaintiff to contact Defendants if she still wanted to cancel her order.

51.     Over the next several days, Plaintiff attempted to contact Defendants on multiple occasions to discuss this issue, but Defendants did not respond to Plaintiff's queries.

52.     Finally, on Monday, October 11, 2021, Defendants' service representative Sam A. contacted Plaintiff via email and represented: "On 09/22 we initiated a cancelation request however the manufacturer did not process it in time and shipped the order anyway on 09/24. Considering that the order is currently in transit if you wish to cancel it's going to be subject to cancelation fees."  See Attachment D, 10/11/21 Email from Sam A. (1Stopbedrooms.com) to Plaintiff.

53.     Plaintiff then contacted the manufacturer, Liberty Furniture Industries, Inc., which confirmed that Plaintiff's order had shipped on September 24, 2021, but revealed that Defendants had not conveyed Plaintiff's cancellation until October 1, 2021.  See Attachment E, 11/23/21 Email from Shannon Whitehead at Liberty to Plaintiff, attaching Defendants' "Cancellation Request" dated "October 1, 2021."

54.     Thus, Defendants' statement to Plaintiff that "[o]n 9/22 we initiated a cancelation request however the manufacturer did not process it in time and shipped the order anyway" was yet another lie.  Defendants in fact did not inform the manufacturer of Plaintiff's cancellation until October 1 – nine days after Defendants claimed to have "initiated" Plaintiff's cancellation, and seven days after Plaintiff's order shipped.

55.     Moreover, Liberty confirmed that if it had been informed of Plaintiff's cancellation before shipping Plaintiff's order on September 24 – e.g., when Plaintiff first cancelled her order on September 17, or when Defendants confirmed receipt of Plaintiff's cancellation on September 20, or when Plaintiff reiterated the cancellation of her order on

September 21, or when Defendants told Plaintiff that her "cancelation request has been submitted to the manufacturer" on September 23 – then Plaintiff's order would not have shipped.

56.     Based on the foregoing, Plaintiff alleges that Defendants deliberately delayed communicating Plaintiff's cancellation to the manufacturer until after the ship date for her order specifically so that Defendants could avoid giving Plaintiff a full refund and instead retain the full amount of her payment, or at minimum a 15% restocking fee and return shipping fees of $1.75 per pound.

57.     Based on Defendants' refusal to pay Plaintiff the promised refund for her timely cancellation, as well as Defendants' deliberate delay in conveying her timely cancellation to the manufacturer, Plaintiff filed a complaint with the Better Business Bureau ("BBB") regarding Defendants' conduct.

58.     In response to Plaintiff's BBB complaint, Defendants' support representative "Joan P" sent Plaintiff an email on Wednesday, January 19, 2022, promising to give Plaintiff a full refund if Plaintiff would close her BBB complaint.  See Attachment F, Email from Joan P (1Stopbedrooms) to Plaintiff, stating:

> Hi Jennifer, I have reviewed your order, and would be happy to issue you the refund, however we request that you mark the BBB complaint as resolved.  The order is currently on hold due to the complaint and I cannot modify the order in any way until it's closed.  Please let us know when the complaint is resolved and I will promptly issue the refund.

59.     On the same day, Plaintiff received another email from Defendants, this one from Defendants' Director of Operations Jon Morrison, which again promised to give Plaintiff a full refund if Plaintiff closed her BBB complaint.  See Attachment G,  Email form Jon Morrison, Director of Operations for 1StopBedrooms to Plaintiff, stating:

> I'm glad we were able to resolve this issue.  As I stated, upon the closing of the BBB complaint I will be issuing you a full refund of $3,978.11 to your Mastercard.  You will receive an email that your refund is processing and by

1/25/22 the refund will appear on your statement.   I fully expect it to be sooner than that as it typically takes only two to three business days.

60.     In reliance on Defendants' repeated promises to give her a full refund of the $3,978.11 that she paid to Defendants, Plaintiff closed her BBB complaint on the same day and promptly notified Defendants.

61.     On the following day, however, Defendants' Director of Operations Jon Morrison reneged on his promise and refused to provide the promised refund to Plaintiff, specifically stating:  "As your order is at the local hub awaiting delivery it is ineligible for a full refund … I could offer $500 off the order if you are willing or we are back to square one."

62.     Thus, Defendants' promise to give Plaintiff a full refund after she closed her BBB complaint was yet another lie, invented by Defendants solely to persuade Plaintiff to close her BBB complaint in order to raise Defendants' BBB rating.  Defendants' failure to pay the promised refund was also a direct breach of an express agreement between Plaintiff and Defendants.

63.     As of this filing, Plaintiff has paid $3,978.11 to Defendants but has not received any furniture or other benefit from Defendants.  Defendants promised Plaintiff a full refund of the $3,978.11 she paid to Defendants on at least three occasions – once when she cancelled her order prior to shipment (which Plaintiff did) and twice when withdrew her BBB complaint (which Plaintiff also did) – yet Defendants have refused to provide the promised refund.

64.     Despite Defendants' repeated promises to give Plaintiff a full refund, all that Defendants have actually offered Plaintiff is $500 off an order of bedroom furniture that she does not need or want and timely cancelled nine months ago.

65.     If Plaintiff had known that Defendants had a uniform policy of refusing to provide full refunds of furniture orders that were properly and timely cancelled, or of purposely delaying

the communication of order cancellations to make them untimely, or of promising to provide a full refund upon the withdrawal of a BBB complaint and yet failing to do so, Plaintiff never would have purchased furniture from Defendants and never would have marked her BBB complaint as resolved.

66.     As a result of Defendants' deceptive conduct, Plaintiff was forced to pay $3,978.11 in August 2021 – approximately 10 months ago – and has received nothing in return.

67.     What happened to Plaintiff was not an accident or an isolated incident.

68.     Rather, it was part of a uniform policy in which Defendants engaged in a systematic scheme of false and misleading conduct for their own profit and pecuniary gain.

69.     First, Defendants entice potential customers to purchase furniture from Defendants through their uniform policy of promising such customers, through Defendants' sales representatives, that they can cancel their order at any time before shipment and receive a full refund.  This representation is false, however, because even when a customer cancels in a timely manner, Defendants have a uniform policy of refusing to pay the promised refund, as described herein.

70.     Second, when a customer timely cancels an order, Defendants have a uniform policy of deliberately delaying communication of that cancellation to the furniture manufacturer until after the furniture has shipped, so that Defendants have an excuse not to pay the promised full refund to the customer.  Instead of paying a full refund to the customer, Defendants will either offer the customer a partial refund (e.g., $500 off a $4,000 order) or charge the customer a 15% "restocking fee" plus "return shipping" costs of $1.75 per pound.

71.     Third, if a customer complains to the Better Business Bureau or some other consumer protection agency about Defendants' deceptive and misleading conduct, Defendants

have a uniform policy of promising them a full refund on the condition that they withdraw their complaint or mark it resolved.  Once the complaint is withdrawn or closed, however, Defendants refuse to pay the promised refund.

72.     These uniform policies include both affirmative misstatements and knowing omissions of material facts, and constitute deceptive acts and practices and false advertising in violation of New York law.  These uniform policies also constitute violations of New York common law.

73.     As a result of Defendants' unlawful, deceptive conduct, Plaintiff and the class members have suffered damages as set forth herein.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this class action lawsuit on behalf of herself and members of a proposed class defined as:

> **All persons who, within the applicable limitations period, either: (1) ordered and paid for furniture from Defendants, cancelled that order before shipment, and were never refunded the full purchase price; or (2) ordered and paid for furniture from Defendants, cancelled that order after shipment, and were never refunded monies per Defendants' return policy.**

75.     Plaintiff also brings this class action lawsuit on behalf of herself and members of a proposed class defined as:

> **All persons who, within the applicable limitations period, were offered a refund for removing, closing, or marking resolved a public review in exchange for a full or partial refund, and were never paid the promised refund.**

76.     The classes for whose benefit this action is brought are each so numerous that joinder of all members is impracticable.

77.     The exact number and identities of the persons who fit within the proposed classes are each contained in Defendants' records and can be easily ascertained from those records, but the proposed classes contain at least five hundred persons each.

78.     The claims in this action arise exclusively from Defendants' uniform policies as alleged herein.

79.     No violations alleged are a result of any individualized interaction between Defendants and any class member.

80.     There are common questions of law and fact affecting the rights of the class members, including, *inter alia*, the following:

    a.   whether the alleged uniform policies of Defendants exist;

    b.   whether Defendants' alleged uniform policies and conduct constitute deceptive acts and practices in violation of New York General Business Law § 349;

    c.   whether Defendants' alleged uniform policies and conduct constitute false advertising in violation of New York General Business Law § 350;

    d.   whether Defendants' alleged uniform policies and conduct constitute a breach of contract;

    e.   whether Defendants' alleged uniform policies conduct constitutes a breach of the implied covenant of good faith and fair dealing; and

    f.   whether Plaintiff and the class are entitled to injunctive and declaratory relief barring Defendants from continuing to employ the policies described herein.

81.     Plaintiff is a member of the classes she seeks to represent.

82.     The claims of Plaintiff are not only typical of all class members, they are identical.

83.     All claims of Plaintiff and the class arise from the same course of conduct, policies, and procedures outlined herein, and they are all based on the exact same legal theories.

84.     Plaintiff seeks the same relief for herself as for every other class member.

85.     Plaintiff has no interest antagonistic to or in conflict with the classes.

86.     Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent herself and the classes.

87.     Defendants have acted and/or refused to act on grounds generally applicable to the classes, thereby making appropriate injunctive and declaratory relief for each class as a whole.

88.     The prosecution of separate actions by individual class members would as a practical matter be dispositive of the interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

89.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member were less than $5,000 and thus are not great enough to make separate individual lawsuits against Defendants economically viable.

90.     Common questions will predominate, and there will be no unusual manageability issues.

91.     Without the proposed class action, Defendants will likely retain the benefit of their wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and class members.

## CAUSES OF ACTION

## COUNT I

### Violations of New York General Business Law § 349

92.     Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

93.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

94.     In their advertising and sale of furniture from their headquarters in New York to customers in New York and throughout the United States, Defendants conducted business and trade within the meaning of New York General Business Law § 349.

95.     Plaintiff and class members are each consumers who purchased furniture from Defendants for their personal use.

96.     Defendants have engaged in deceptive and misleading policies and practices with respect to Plaintiff and the Class, which include, without limitation:

a.      Selling furniture to customers with the explicit promise and agreement that customers may cancel at any time before shipment and receive a full refund of their purchase price, but then refusing to provide the promised refund when customers cancel in a timely manner;

b.      Threatening to charge customers a non-existent, bogus "cancellation fee" for cancelling their orders, which fee was never agreed-to by customers and was not part of the contract between Defendants and their customers;

c.      Deliberately delaying the communication of a customer's cancellation request to the furniture manufacturer until after the furniture has shipped, so that Defendants can refuse to allow the customer to return the furniture, or at minimum charge the customer a 15% "restocking fee" plus exorbitant "return shipping" costs; and

d.      Promising to provide a full refund to customers who withdraw or close their BBB or other online complaints, but then refusing to pay the promised refund after customers have withdrawn or closed their complaints.

97.     Moreover, Defendants omitted, actively concealed, and failed to disclose these policies and practices to their customers.  With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and class members; and (b) Defendants concealed material information from Plaintiff and class members.

98.     Defendants' misrepresentations and omissions have a tendency to deceive, and in fact deceived, the general public, including Plaintiff and the class.

99.     Defendants' misrepresentations and omissions were and are material, in that they were likely to, and did in fact, mislead reasonable consumers acting reasonably under the circumstances.

100.     Although not required by New York law, Plaintiff and class members reasonably relied on Defendants' material misrepresentations and deceptive policies and practices, and would not have purchased furniture from Defendants, or would not have withdrawn or closed their complaints regarding Defendants, had they known the truth about Defendants' policies and practices.

101.     Defendants knowingly and willingly committed these deceptive acts and practices for their own profit and for the profit of their shareholders.

102.     As a direct and proximate result of Defendants' actions, Plaintiff and class members have been harmed and have lost money or property in the amount of the refunds that they were promised and contracted for but never received.

103.     By reason of this conduct, Defendants have engaged in deceptive conduct in violation of the New York General Business Law.

104.     Defendants' actions were the direct, foreseeable, and proximate cause of the damages that Plaintiff and class have sustained, as Defendants refused to pay the refunds that they repeatedly promised to Plaintiff and the class.

105.     As a result of Defendants' actions and violations, Plaintiff and the class members have suffered damages and are entitled to recover those damages as well as statutory and treble damages and reasonable attorney's fees from Defendants.  Plaintiff and the class are also entitled to injunctive relief in the form of an order directing Defendants, *inter alia*, to cease the challenged practices and initiate a program to provide refunds and/or restitution to Plaintiff and the class.

## COUNT II

### Violations of New York General Business Law § 350

106.     Plaintiff realleges and incorporate by reference all paragraphs previously alleged herein.

107.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

108.     Pursuant to the statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

109.     Defendants have engaged in misleading advertising in the sale of furniture from their headquarters in New York to customers in New York and throughout the United States, including, without limitation, :

a.     Selling furniture to customers with the explicit promise and agreement that customers may cancel at any time before shipment and receive a full refund of their purchase price, but then refusing to provide the promised refund when customers cancel in a timely manner; and

20

   b. Promising to provide a full refund to customers who withdraw or close their BBB or other online complaints, but then refusing to pay the promised refund after customers have withdrawn or closed their complaints;

110. Moreover, Defendants omitted, actively concealed, and failed to disclose these policies and practices in their advertisements.  With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and class members; and (b) Defendants concealed material information from Plaintiff and class members.

111. Defendants' misleading advertisements have a tendency to deceive, and in fact deceived, the general public, including Plaintiff and the class.

112. Defendants' misleading advertisements were and are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

113. Although not required by New York law, Plaintiff and class members reasonably relied on Defendants' misleading advertisements, and would not have purchased furniture from Defendants, or would not have withdrawn or closed their complaints regarding Defendants, had they known the truth about Defendants' policies and practices.

114. Defendants knowingly and willingly made these false advertisements and misrepresentations for their own profit and for the profit of their shareholders.

115. As a direct and proximate result of Defendants' actions, Plaintiff and class members have been harmed and have lost money or property in the amount of the refunds that they were promised and contracted for but never received.

116.    By reason of this conduct, Defendants have engaged in deceptive advertising in violation of the New York General Business Law.

117.    Defendants' actions were the direct, foreseeable, and proximate cause of the damages that Plaintiff and class have sustained, as Defendants refused to pay the refunds that they repeatedly promised to Plaintiff and the class.

118.    As a result of Defendants' actions and violations, Plaintiff and the class members have suffered damages and are entitled to recover those damages as well as statutory and treble damages and reasonable attorney's fees from Defendants.  Plaintiff and the class are also entitled to injunctive relief in the form of an order directing Defendants, *inter alia*, to cease the challenged practices and initiate a program to provide refunds and/or restitution to Plaintiff and the class.

**COUNT III**

**Breach of Contract**

119.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

120.    Plaintiff and each class member had a valid contract with Defendants for the sale and purchase of furniture and/or for the withdrawal or closing of online complaints.

121.    By the acts alleged herein, Defendants have materially breached these contracts.

122.    Specifically, it was a breach of contract for Defendants to promise Plaintiff and class members a full refund of their purchase price if they cancelled their orders before shipment, and then fail to provide the promised refund upon timely cancellation.

123.    Moreover, it was a breach of contract for Defendants to promise Plaintiff and class members a full refund if they withdraw or close their online complaints, and then refuse to provide the promised refund upon withdrawal/closure.

124.    As a direct and proximate result of Defendants' breaches of contract, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT IV

### Breach of Contract Through Violation of
### the Implied Covenant of Good Faith and Fair Dealing

125.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

126.    There was a contract between Defendants and Plaintiff and each class member for the sale and purchase of furniture and/or for the withdrawal or closing of online complaints.

127.    By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

128.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and Plaintiff and each class member.

129.    Specifically, Defendants have violated the duty of good faith and fair dealing with respect to their contracts with Plaintiff and the class by, *inter alia*:

a.    Selling furniture to customers with the explicit promise and agreement that customers may cancel at any time before shipment and receive a full refund of their purchase price, but then refusing to provide the promised refund when customers cancel in a timely manner;

b.      Threatening to charge customers a non-existent, bogus "cancellation fee" for cancelling their orders, which fee was never agreed-to by customers and was not part of the contract between Defendants and their customers;

c.      Deliberately delaying the communication of a customer's cancellation request to the furniture manufacturer until after the furniture has shipped, so that Defendants can refuse to allow the customer to return the furniture, or at minimum charge the customer a 15% "restocking fee" plus exorbitant "return shipping" costs; and

d.      Promising to provide a full refund to customers who withdraw or close their BBB or other online complaints, but then refusing to pay the promised refund after customers have withdrawn or closed their complaints.

130.    Moreover, Defendants omitted, actively concealed, and failed to disclose these policies and practices to their customers.  With respect to such omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and class members; and (b) Defendants concealed material information from Plaintiff and class members.

131.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to:

a.  Certify the proposed classes as a class action pursuant to Federal Rule of Civil Procedure 23;

b.  Appoint Plaintiff as representative for the proposed classes, and appoint Plaintiff's counsel as lead counsel for the class;

c.  Enter an order for injunctive relief as described herein;

d.  Enter judgment in favor of Plaintiff and each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

e.  Award Plaintiff and the class statutory, treble, and punitive damages;

f.  Award Plaintiff reasonable attorneys' fees and costs; and

g.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demand a trial by jury as to all issues so triable.

**DENITTIS OSEFCHEN PRINCE, P.C.**

Dated:  June 22, 2022                BY: _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
315 Madison Ave., 3rd Fl.
New York, NY 10017
Telephone: (646) 979-3642
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

*Attorney for Plaintiff and the Proposed Class*

# Exhibit A

**jeneaston@comcast.net**

| | |
|---|---|
| **From:** | jeneaston@comcast.net |
| **Sent:** | Tuesday, September 21, 2021 10:17 PM |
| **To:** | '1Stopbedrooms' |
| **Subject:** | RE: [1Stopbedrooms.com] Re: PO# 8975027 Order Cancellation |

Hi Jane – Yes, I would like to proceed with cancelling the order, but I do not approve the cancellation fee. At the time that I ordered the Bedroom Set on 8/29, Mike informed me that I would be able to cancel anytime before the bedroom set was shipped from the warehouse and would be able to receive a FULL refund. At the time of my cancellation request, the items had not shipped.  Thank you for processing the refund of the full amount.

Thank you –
Jennifer Easton

**From:** Jane S (1Stopbedrooms) <service@1stopbedrooms.com>
**Sent:** Monday, September 20, 2021 12:17 PM
**To:** jennifer easton <jeneaston@comcast.net>
**Subject:** [1Stopbedrooms.com] Re: PO# 8975027 Order Cancellation

~#~ Please type your reply above this line ~~

Your request (#1637524) has been updated. To add additional comments, reply to this email.

---

**Jane S** (1Stopbedrooms.com)
Sep 20, 2021, 1:17 PM EDT

Hello Jennifer,

We have received your cancelation request.

Unfortunately, having to cancel the order now will be subject to the cancelation fees.

Please let me know how you would like to proceed.



1StopBedrooms
Customer Support Team

# Exhibit B



**jeneaston@comcast.net**

| | |
|---|---|
| **From:** | Jane S (1Stopbedrooms) <service@1stopbedrooms.com> |
| **Sent:** | Thursday, September 23, 2021 7:10 AM |
| **To:** | jennifer easton |
| **Subject:** | [1Stopbedrooms.com] Re: PO# 8975027 Order Cancellation |

##- Please type your reply above this line -##

Your request (#1637524) has been updated. To add additional comments, reply to this email.

**Jane S (1Stopbedrooms.com)**

Sep 23, 2021  5:10 AM PDT

Hi Jennifer,

The cancelation request has been submitted to the manufacturer. Once confirmed, the refund will be issued to your initial payment source.

This process will take a few business days.

Have a great day!

1StopBedrooms
Customer Support Team

**jennifer easton**

Sep 22, 2021, 11:44 PM EDT

No thank you. I would appreciate the refund processed in full.

Thank you –
Jennifer

**Jane S (1Stopbedrooms.com)**

Sep 22, 2021  11:37 PM EDT

# Exhibit C

**jeneaston@comcast.net**

| | |
|---|---|
| **From:** | 1StopBedrooms <no-reply@1stopbedrooms.com> |
| **Sent:** | Monday, October 4, 2021 10:30 AM |
| **To:** | jeneaston@comcast.net |
| **Subject:** | 1StopBedrooms: Order #8975027 status update |



Order# **8975027**

**Cancellation Request - Rejected**

Dear jennifer easton,

We're sorry Liberty has informed us that they were unable to cancel your order because this order has already shipped out. If you would still like to cancel this order please contact us immediately at **866-456-8823**.

Thank you,

1StopBedrooms
Sales and Service Squad



1

# Exhibit D

jeneaston@comcast.net

| | |
|---|---|
| **From:** | Sam A.* (1Stopbedrooms) <service@1stopbedrooms.com> |
| **Sent:** | Monday, October 11, 2021 2:11 PM |
| **To:** | jennifer easton |
| **Subject:** | [1Stopbedrooms.com] Re: PO 8975027 |

==- Please type your reply above this line -==

Your request (#1672290) has been updated. To add additional comments, reply to this email.

**Sam A.\* (1Stopbedrooms.com)**

Oct 11, 2021, 3:10 PM EDT

Hello Jennifer,

My apologies for the late reply.

On 09/22 we initiated a cancelation request however the manufacturer did not process it in time and shipped the order anyway on 09/24.

Considering that the order is currently in transit if you wish to cancel it's going to be subject to cancelation fees.

We apologize for the inconvenience this situation may have caused.



1StopBedrooms
Customer Support Team

**jennifer easton**

Oct 5, 2021, 9:20 PM EDT

Sam -
I have not heard back from you or any other representative from 1 Stop Bedrooms. I will be contacting my credit card company today and putting in for a dispute on the charges that you have not refunded since I first asked for the order to be cancelled on 9/17/2021.

Jennifer Easton

Sent from my iPhone

1

# Exhibit E

(10)

**jeneaston@comcast.net**

| | |
|---|---|
| **From:** | Shannon Whitehead <ShannonWhitehead@libertyfurn.com> |
| **Sent:** | Tuesday, November 23, 2021 1:20 PM |
| **To:** | Jennifer Easton |
| **Subject:** | RE: 1STOP |

Hi Jennifer,

After much research, I have found that they sent me a cancellation request on 10/01/21. However, this left our facility on 09/24/21 and it was too late to cancel. At this point I would suggest you claim a dispute with your credit card company. I wish I could do something else but I'm afraid I'm at the end of the road on our side. I'm so sorry for the inconvenience.

***Please reply to this email thread to continue this conversation.***

*Please be advised, Liberty Furniture Industries will be closed Wednesday, November 24th through Friday, November 26th, 2021 for the Thanksgiving holiday. We will resume regular business hours on Monday, November 29th, 2021.*

Best Regards,

**Shannon Whitehead**
*E-commerce Key Account Specialist*
**Liberty Furniture Industries, Inc**
6021 Greensboro Dr SW Atlanta, GA 30336
(404) 637-2306 (Direct)
(800) 275-2223 (Main)
(800) 238-9411 (Fax)



www.mylibertyfurniture.com



This e-mail and attachments is intended only for use by the person or entity to which it is addressed and may contain confidential material. Any retransmission, copying or other use of this e-mail and any attachments hereto by persons or entities other than the intended recipient is strictly prohibited. Nothing herein should be considered an electronic signature

**From:** Jennifer Easton <jeneaston@comcast.net>
**Sent:** Thursday, November 18, 2021 5:44 PM

1

jeneaston@comcast.net

⑨

| From: | Shannon Whitehead <ShannonWhitehead@libertyfurn.com> |
|---|---|
| Sent: | Tuesday, November 23, 2021 3:58 PM |
| To: | Jennifer Easton |
| Subject: | RE: 1STOP |

Hi,

Please see below.

From: Payless Furniture Order Entry <orders@paylessfurnitureny.com>
Sent: Friday, October 1, 2021 3:29 AM
To: Jaycie Miller <jayciemiller@libertyfurn.com>
Subject: URGENT PLEASE CANCEL PO# 897502711

### Cancellation Request

Please Cancel PO# 897502711.
**Please reply back to this email and let us know if:**
This order has been cancelled.
or
This order can not be cancelled.
(Please provide a reason in your reply if this order can not be cancelled.)

| PO# | Ship With: | Ship To: |
|---|---|---|
| 897502711 | Styline Logistics | RLM – Dallas Hub 1100 N Royal Lane Irving, Texas, 75063 Tel: 469-242-7000 |

| SKU | Qty |
|---|---|
| 406-BR15 | 1x |
| 406-BR16 | 1x |
| 406-BR90 | 1x |
| 406-BR31 | 1x |
| 406-BR61 | 2x |

***Please reply to this email thread to continue this conversation.***

1

# Exhibit F

From: **Joan P (1Stopbedrooms)**
service@1stopbedrooms.com

Subject: **[1Stopbedrooms.com] BBB 16422667 - Action Required**

Date: Jan 19, 2022 at 3:59:36 PM

To: jennifer easton jeneaston@comcast.net

--- Please type your reply above this line ---

A ticket (#1892655) by jennifer easton has been created on your behalf

**Joan P** (1Stopbedrooms.com)

Hi Jennifer,

I have reviewed your order, and would be happy to issue you the refund, however, we request that you mark the BBB complaint as resolved.

The order is currently on hold due to the complaint and I cannot modify the order in any way until it's closed.

Please let us know when the complaint is resolved and I will promptly issue the refund.


Regards,
Joan P.

1StopBedrooms
Customer Support Team




Please be advised that due to the current global circumstances with COVID-19, our supply chain and logistic networks may be impacted by delays for the remainder of May and into June. These anticipated delays can impact the delivery time of orders and warranty replacements. At present we may only have limited information on when your order will ship, or when it will be received on your side, but rest assured that we are working to fulfill and ship your order as quickly as possible. We appreciate your patience during this time of uncertainty.

# Exhibit G

From: Jon Morrison Jon.M@1stopbedrooms.com
Subject: Order #8975027
Date: Jan 19, 2022 at 6:31:45 PM
To: jeneaston@comcast.net

Hi Jennifer,

Thank you for speaking with me this evening and I'm glad we were able to resolve this issue. As I stated, upon the closing of the BBB complaint I will be issuing you a full refund of $3,978.11 back to your Mastercard. You will receive an email that your refund is processing and by 1/25/22 the refund will appear on your statement. I fully expect it to be sooner than that as it typically takes only two to three business days. If you have any questions or concerns please don't hesitate to contact me. Thank you.

Regards,

Jon

Jon Morrison | Director of Operations

1StopBedrooms | 1716 Coney Island Ave | Brooklyn NY 11230
Jon.M@1StopBedrooms.com | www.1StopBedrooms.com
T: (888) 581-6810 x 7028